NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO LEYBA, | No. C 05-01744 JF (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| D.L. RUNNELS, Warden, | |
| Respondent. | |

Petitioner, a California prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to habeas corpus relief and will deny the petition.

///

///

///

## PROCEDURAL BACKGROUND

A Monterey Superior Court jury convicted Petitioner of first degree murder (Cal. Penal Code § 187), shooting at an occupied motor vehicle (Cal. Penal Code § 246), discharging a firearm from a vehicle (Cal. Penal Code § 12034(d)), and three counts of second degree robbery (Cal. Penal Code § 211). Gang, personal use, and arming enhancements also were found to be true pursuant to Cal. Penal Code §§ 186.22(b)(1), 12022.53(c)-(d), 12022(a)(1). On August 2, 2001, Petitioner was sentenced to sixty-six years-to-life in state prison.

Petitioner appealed the judgment. On October 21, 2003, the state appellate court modified the judgment to strike the section 12022.53(c) personal use enhancement, to strike the ten year gang enhancement and to impose the fifteen year minimum parole eligibility of section 186.22, but otherwise affirmed. The state supreme court denied review on January 28, 2004.

Petitioner filed a federal habeas petition in this Court on April 26, 2005, along with a request to hold the petition in abeyance while Petitioner returned to state court to exhaust his state remedies. On May 23, 2005, this Court granted the request for a stay. On April 12, 2006, the state supreme court denied Petitioner's state habeas petition. Petitioner filed the instant amended petition on May 11, 2006, and the matter was reopened.

## FACTUAL BACKGROUND

The following facts are taken from the unpublished opinion of the California Court of Appeal[1]:

> Lugo, [Petitioner] and Richard Islas belonged to Salinas East Market (SEM), a Norteno criminal street gang. On June 4, 2000, they decided to commit a robbery. They planned to rob concert promoters at the rodeo grounds.

---

[1] People v. Lugo et al., No. H023308, slip op. at 2-5 (Oct. 21, 2003) (Resp't Ex. D(A)).

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.05\Leyba01744_denyHC.wpd

The threesome traveled to the rodeo grounds in a maroon Mitsubishi owned by Lugo's father's [fiancé], Patricia Cabrera. Islas had a .22 caliber handgun in his waistband. [Petitioner] had a .30 caliber sawed off rifle in a suitcase. Lugo had a .40 caliber gun in his waistband. They also brought changes of clothing, a police scanner, gloves and knit caps.

After arriving at the rodeo parking lot, they scanned the area for 30-40 minutes. About 5:00 pm, they saw the individuals they suspected of having the money. The individuals were entering a large burgundy car. Lugo, [Petitioner] and Islas followed the car to the [Laurel] Inn and then parked their vehicle at a nearby convenience store.

Islas and Lugo got out of the car with the beanies, [hoods], gloves and weapons. To facilitate the getaway, [Petitioner] stayed inside the vehicle. After walking down a breezeway, Islas and Lugo paused to pull down their hoods and beanies, and remove their guns.

Priscliano Villanueva had driven the burgundy car to the Laurel Inn. Jaime Narango Munoz, Jose Lara and Don Pepe were passengers. Villanueva had little money with him because he was not going to get paid until he arrived in Los Angeles.

When Villanueva exited the burgundy car, Islas put a gun to his back, demanded money, and threatened to kill him. Islas demanded that Villanueva lay on the ground face down. Villanueva complied, and Islas demanded the car keys. Villanueva threw them over his body.

At gunpoint, Islas and Lugo ordered Munoz to get the keys and open the car trunk. Munoz complied, and Islas removed two or three duffel bags from the trunk. Lugo chased Lara up some stairs and took Lara's briefcase.

Islas and Lugo ran back to the Mitsubishi. [Petitioner] had moved the car closer to the breezeway and had the car doors open. Islas and Lugo got in the car and they drove away. Shortly thereafter, they passed a police car.

Marina Marquez saw two men wearing hoods running from the Laurel Inn to a car. Finding the situation suspicious, Marquez wrote down the vehicle license plate number. Marquez later saw a man at a police car. The man she saw was Munoz, who had driven into the street and stopped the police. Marquez gave the license plate number to the police.

[Petitioner], Lugo, and Islas heard their license plate number broadcast over the police scanner. They drove to the apartment of Lugo's cousin, Joe Montoya, believing they would be safe there. They got out of the car, wiped away their fingerprints, and took the luggage into the apartment. A search of the luggage revealed no money. Islas asked where the guns were. They realized they had left the guns in a briefcase in the parking lot by the car. Islas was angry that they had left the guns behind. They went back and brought the guns upstairs.

Islas called his girlfriend, Maria [Higuera], and asked her to pick them up. [Higuera] was 17 years old and seven months pregnant with Islas's child. Borrowing her aunt's green Nissan Sentra, [Higuera] picked up the threesome outside the apartment complex gate. [Petitioner] was carrying the suitcase with the guns.

Islas sat in the passenger seat, Lugo sat behind Islas, and [Petitioner] sat behind Higuera. Lugo, Islas, and [Petitioner] discussed hearing their license plate number broadcast over the police scanner. They discussed being angry that the robberies had not gone as planned. They decided to get something to eat.

As they drove down the street, Higuera accidentally got in the left hand turn lane. When they were stopped at the intersection, [Petitioner] pointed out a man in a black Honda. [Petitioner] said the man looked like a "scrap," a derogatory term for a Sureno, a rival gang. After the light changed, and they turned left onto Laurel, [Petitioner] told Higuera to slow down so they could verify the man's identity. [Higuera] slowed down and pulled to the right. The Honda approached on the left. Lugo and [Petitioner] tried to get the man's attention by waving and yelling at him. [Higuera] told them to stop. She pulled up [Petitioner]'s window with an automatic switch. [Petitioner] put the window back down.

As the cars approached a red light at the next intersection, they slowed down. [Petitioner] pulled out his .30 caliber rifle and shot at the Honda. Islas told Higuera, "Hey get down," and pulled her down. Several shots were fired. [Petitioner] said, "I got him. Go, go" and stopped firing.

The driver of the Honda, Mario Magana, was shot in the head and died. He was a member of the Hebron Street Gang, a Sureno gang and a Norteno gang rival.

Lugo and [Petitioner] were charged with first-degree murder, two counts of shooting at an occupied motor vehicle, discharging a firearm at a vehicle, and three counts of second-degree robbery. Gang and personal use enhancements were alleged in connection with the murder, in connection with one count of shooting at an occupied motor vehicle, and in connection with discharging a firearm from a vehicle. A personal use enhancement was alleged in connection with all robbery counts.

Lugo was convicted of three counts of robbery. The personal use enhancements (§ 12022.53, subd. (b)) were found to be true. Lugo was acquitted of the remaining counts.

[Petitioner] was convicted of first degree murder, one count of shooting at an occupied motor vehicle, discharging a firearm from a vehicle, and convicted of three counts of robbery. In connection with the murder, shooting at an occupied vehicle, and discharging a firearm from a vehicle, the gang (§ 186.22, subd. (b)(1)) and personal use enhancements (§ 12022.53, subds. (c) & (d)) were found true. Arming enhancements were found true as to the robbery counts. (§ 12022, subd. (a)(1).)

Lugo was sentenced to 19 years, four months in state prison. [Petitioner] was sentenced to 66 years to life in state prison.

## LEGAL CLAIMS

Petitioner asserts the following claims for habeas relief: (1) that new evidence demonstrates Petitioner's actual innocence and fundamentally undercuts the state's

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.05\Leyba01744_denyHC.wpd

1  case; and (2) that his conviction violates due process because the trial court gave
2  incorrect jury instructions that permitted the jury to convict him based upon
3  uncorroborated accomplice testimony.

## DISCUSSION

### A. Standard of Review

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was

'objectively unreasonable.'" Id. at 409.  In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made by a state court unless the Petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**B.     Analysis of Legal Claims**

   1.     New Evidence Showing Actual Innocence

Petitioner claims that a recent declaration by Carlos Lugo stating that Petitioner did not shoot the victim is new evidence that demonstrates Petitioner's actual innocence and fundamentally undercuts the state's case. (Pet. at 17.)  Lugo and Petitioner were co-defendants on the murder and robbery charges, and during trial Lugo asserted his Fifth Amendment privilege not to testify.  (Resp't at 4.)  Lugo was convicted of three counts of robbery but acquitted on the murder charge.  (Resp't Ex. D(A) at 5.)  His declaration contradicts several facts found by the jury, and alleges that Richard Islas, not Petitioner, fired the fatal shot.  (Pet. Ex. B at 2-4.)  Respondent argues that Petitioner's claim of actual innocence is not cognizable on federal habeas. (Resp't at 4.)

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). In Herrera, the Supreme Court assumed without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id. at 417. The Supreme Court has declined to answer the question left open in Herrera, which is whether freestanding actual innocence claims (i.e., claims in which the petitioner argues that the evidence sufficiently establishes his innocence, irrespective of any constitutional error at trial or sentencing) are possible. See House v. Bell, 547 U.S. 518, 554-555 (2006). The Ninth Circuit has held that a capital habeas petitioner may assert a freestanding actual innocence claim because a majority of the justices in Herrera would have supported such a claim. See Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc). The petitioner's burden in such a case is "extraordinarily high," and requires a showing that is "truly persuasive." See id. (quoting Herrera, 506 U.S. at 417). To be entitled to relief, the capital habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent. See id.; Jackson v. Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000). Requiring affirmative proof of innocence is appropriate, because when a petitioner makes a freestanding claim of innocence, he is claiming that he is entitled to relief despite a constitutionally valid conviction. See Carriger, 132 F.3d at 476.

In District Attorney's Office for Third Judicial Dist. v. Osborne, the Supreme Court assumed without deciding that freestanding actual innocence claims are cognizable in habeas proceedings in both capital and non-capital cases. 129 S.Ct. 2308, 2321-22 (2009). Similarly, this Court will assume without deciding that Petitioner may assert a claim based on a federal constitutional right to be released upon proof of actual innocence.

Petitioner first raised this claim in his state habeas petition. The state supreme

court summarily denied Petitioner's state habeas petition with a citation to In re Clark, which states that "newly discovered evidence is a basis for relief only if it undermines the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury." In re Clark, 5 Cal.4th 750, 766 (1993).

Petitioner has failed to meet the "extraordinarily high" burden of showing actual innocence. Carriger, 132 F.3d at 476. Petitioner has not presented any new evidence, such as a video recording or DNA, that would preclude any possibility of his guilt. While Lugo's statement serves to undercut the evidence presented at trial, it does not affirmatively prove Petitioner's innocence. Id. Even if Lugo had testified at Petitioner's trial, there were two other eyewitnesses whose consistent testimony contradicted Lugo's account of the shooting.

Accordingly, the state court's decision to reject this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

2.   Jury Instructions Regarding Accomplice Testimony

Petitioner claims that he was denied due process by the trial court's instructions to the jury that allegedly allowed the jury to rely on uncorroborated accomplice testimony to convict him. (Pet. at 22.) The trial court gave instructions that defined an accomplice as "a person who is subject to prosecution for the identical offense charges [*sic*] in Counts One through Seven against the defendant on trial by reason of aiding and abetting..."[2] (Resp't Ex. D(A) at 5.) Petitioner argues that the seven counts involved two separate incidents, and complicity in either of the two incidents was sufficient to make a witness an accomplice, yet the instruction required the jury to

---

[2] Charges 1-4 related to the murder of Magana, while charges 5-7 related to the robbery at the Laurel Inn. (Resp't Ex. D(A) at 6-7.)

find that the witness was potentially subject to prosecution on all seven counts before the jury could find that the witness was an accomplice. (Pet. at 22.) Since California law prohibits a conviction based upon the testimony of an accomplice unless it is corroborated by other evidence,[3] Petitioner argues that instructional error allowed the jury to convict him based solely on uncorroborated accomplice testimony. (Id. at 23.) Respondent argues that Petitioner's claim does not present a federal question. (Resp't at 9.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the erroneous jury instruction "so infused the trial with unfairness as to deny due process of law." Estelle v. McGuire, 502 U.S. 62, 75 (1991) (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)). If the state court disposed of a constitutional error as harmless under an appropriate standard of review, federal courts must, for purposes of application of the "unreasonable application" clause of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable. Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004). If the federal court determines that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, the federal court then proceeds to the harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Id. at 877.

The state appellate court concluded that the error in jury instruction was harmless. (Resp't Ex. D(A) at 6.) First, the court reviewed Petitioner's argument:

> According to [Petitioner], the instructional error "permitted the jury to find [Petitioner] guilty as to the first three counts [the murder and related counts] based on the uncorroborated testimony of two accomplices, in that the instruction misled the jury into finding that one or both were not accomplices when in fact they were, thereby permitting the jury to convict based on that testimony without corroboration." Specifically, [Petitioner] asserts that a properly instructed jury would almost certainly have found Islas to have been involved in all counts and "the erroneous instruction therefore likely had no impact on the jury's evaluation of his testimony as

---

[3] See Cal. Penal Code § 1111.

> an accomplice." However, [Petitioner] maintains that Higuera, who was not an accomplice to the robbery counts, could have been considered an accomplice to the murder counts. In [Petitioner]'s view, the instructional error would have prevented the jury from identifying Higuera as an accomplice to the murder counts, and if Higuera was an accomplice to the murder counts, then Higuera could not corroborate the testimony of Islas, since Islas was also an accomplice.

(Id.)

The court concluded that Petitioner's argument was flawed because it "assumes the evidence supported a finding that Higuera was an accomplice to the murder counts." (Id.) Rather, the evidence showed that Higuera was not an accomplice because she did not have the requisite knowledge and intent to commit murder. (Id. at 6-7.) The state appellate court determined there was sufficient evidence by which the jury could have found that Higuera was not an accomplice in the murder:

> In particular, Higuera testified that she had not seen the guns taken out of the briefcase. Higuera testified that she did not know there would be a shooting. When Lugo and [Petitioner] yelled at the driver of the Honda, Higuera told them to stop. Higuera also pulled up [Petitioner]'s car window with an automatic switch.

(Id. at 6.)

To be liable as an accomplice under California law, the individual must aid, promote, encourage or instigate a crime, knowing of the unlawful purpose and intending to assist in the commission of a crime. See People v. Beeman, 35 Cal.3d 547, 560 (1984). The state appellate court found that Higuera lacked the requisite knowledge and intent either of committing, or of facilitating commission of, the offense and therefore was not an accomplice to the murder. (Resp't Ex. D(A) at 6.) Accordingly, the court found no prejudice resulting from the jury instruction because "there was no risk the instruction wrongly prevented the jury from finding that Higuera was an accomplice ...." (Id. at 7.)

Under Chapman v. California, 386 U.S. 18, 24 (1967), habeas relief is not warranted if any constitutional error is found to be harmless beyond a reasonable doubt, or harmless under an equivalent state law standard. Although the state appellate court did not identify Chapman as the "guiding point" of its harmless error

1 analysis, it applied a harmless error standard that comports with federal law.  See
2 Medina, 386 F.3d at 878.  Because the state appellate court's approach to Petitioner's
3 claim was consistent with the Supreme Court's holding in Chapman, the state court's
4 application of the harmless error analysis was not objectively unreasonable.  See id.
5 Furthermore, because the error was harmless, it cannot be said that the jury instruction
6 "so infused the trial with unfairness as to deny due process of law."  Estelle, 502 U.S.
7 at 75.
8     Accordingly, the state court's decision to reject this claim was neither contrary
9 to nor an unreasonable application of clearly established federal law, nor was it an
10 unreasonable determination of the facts in light of the evidence presented.  See 28
11 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 7/30/09

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ANTONIO LEYBA,

        Petitioner,

v.

D. L. RUNNELS, Warden,

        Respondent.
                               /

Case Number: CV05-01744 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  8/5/09 , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Antonio Leyba T-28485
High Desert State Prison
PO Box 33
Susanville, CA 96127

Dated:  8/5/09

                                          Richard W. Wieking, Clerk